Good morning. Good morning, Your Honor. May it please the Court, Cheryl Gordon-McLeod on behalf of Mr. Stephenson. The two issues I'd like to reach this morning are the Section 636 delegation issue and the Sixth Amendment right to counsel issue. Turning to the Section 636 issue first, the question here is whether the district court has the right to delegate a felony arraignment to a magistrate judge over the defendant's clear, consistent, and repeated objections. We know that it can't be delegated under several sections of 636, so maybe I can sweep those out of the way first. 636A is inapplicable because A3 limits that to misdemeanor cases and we have a felony here. 636B1B is inapplicable because that deals with specific listed dispositive motions and requires district court review of a report and recommendation. This is not one of the listed motions and there was no R&R for the district court to review. 636B3 is the additional duties clause, and I think the government concedes that it's not delegable under this because it's the one that I briefed extensively in the opening brief and the government didn't respond at all. If it's an appropriate concession, given the three-part test under B3, that looks at whether the defendant consented, whether it's a subsidiary or critical matter, and looks at the degree of interaction between the judge and the defendant. And briefly on those three points, on consent, there was no consent. There was an explicit objection three times, before, during, and afterwards. On the subsidiary or critical issue, arraignment is clearly a critical stage of the proceedings under the 636 cases. For example, Colacurcio, which talks about proceedings at which loss of liberty is a possibility, and Gomez-Lepe, which talks about proceedings at which the right to jury trial and beyond a reasonable doubt issue are implicated. And this is certainly one of those. Finally, on the degree of interaction between the judicial officer and the defendant, this is not a ministerial act like a readback of previously given testimony or a previously given verdict. There's actual interaction about the defendant's exact decision to be made at this time, and, in fact, there's probably more interaction in this case than in most other cases because of Mr. Stevenson's responses, that he didn't understand the indictment, that he had questions about it, and that he wasn't prepared to enter a plea. So if I'm right about that or about the government's concession, I think the heart of this issue is 636b1a, the clause that says the district court can delegate, quote, any pretrial matter pending, close quote, to the magistrate judge. This is a question of statutory interpretation, and I want to start with the principles that I think are applicable to interpreting that language here. First of all, it's a term of art. We know from the ---- Kagan. Well, it seems to me that this goes on all the time. What you're contesting goes on all the time. So do we have any cases that's ---- I mean, you're saying it's statutory construction, but do we have any cases that interpret it the way you're interpreting it? Well, let me start with the beginning of your question. It's true that delegation to the magistrate judge of arraignments occurs all the time. I don't think it's true that arraignment over objection occurs all the time. I've never heard of it occurring before. I couldn't find any case in which arraignment had been delegated over objection before. This was a case where the defendant clearly objected, and the easy answer was to walk down the hall, take five minutes of a judge's time, and have a judge do it. So I think the first part of your question is starting from an incorrect premise. Certainly, arraignments are delegated all the time, almost never, to my knowledge, over a defendant's objection. Therefore, I have no cases to offer you on that point. The cases that I do have to offer you concern delegation of other matters. And I'm trying to look at the B-1A interpretation in particular, any pretrial matter pending. It needs to be interpreted narrowly. We know that from Gomez, United States v. Gomez, the Supreme Court case in which the Supreme Court said that we interpret Section 636 narrowly for two reasons. One, constitutional avoidance. Two, legislative history. Legislative history indicates that only specific matters were going to be delegated. We need to interpret it narrowly also under United States v. Colacurcio, this Court's decision from about 1994, which specifically uses the word narrow when discussing how to interpret 636B, delegation. So beginning with the premise that it's statutory interpretation and the statutes to be interpreted narrowly, what are the prerequisites to delegation under this any pretrial matter pending clause? Well, first, it's not just a temporal. It doesn't just mean anything before the trial occurs. If it did, then we know that voir dire could be delegated, but under Gomez it can't. If it meant anything before a trial occurs, then we would know that a decision on forcible medication motion could be delegated. But under the additional authority that I submitted to you this morning, Rivera-Guerrero, we know that it can't. So the any pretrial matter pending phrase has to mean more than just before the trial starts. The cases that I've cited to you, as well as Wright and Miller, say that it refers not just to something before the trial, but to matters unconnected with the trial. And Gomez and its progeny says that it refers to nondispositive – sorry, dispositive matters only. This is not a matter that is unconnected with the trial. The issue at arraignment is guilt or innocence. When you read Rule 11, it tells you that there's three things that can happen at arraignment, guilty, not guilty, or nolo. You don't get any more close to the issues of guilt or innocence than you do with those three permissible pleas. This is interpreted narrowly. This is not nondispositive, as is required for delegation under B1A. It is when it's a not-guilty plea, isn't it? I'm sorry. It's not dispositive when it's a not-guilty plea, is it? Well, I think what determines whether the proceeding is dispositive or not is the character of the proceeding, not just what happens to occur there after the proceeding starts. Let me give you an analogy. In the case that I submitted to you this morning, the Rivera-Guerrero case, that was a case where this Court held in 2004 that delegation of the decision about whether to forcibly medicate the defendant was a dispositive motion. It didn't say it's a – this Court did not say it's only dispositive if the Court rules he's to be medicated. The Court characterized the nature of the proceeding as a dispositive motion and says the motion itself is dispositive. Similarly, in common parlance … I don't see an arraignment and something on forced medication as being even in the same ballpark. Well, in the sense that one is … I mean, you know, I know. Forgive me for that. But I'm just going to tell you that from the standpoint that, and particularly I think the magistrate had to enter a plea of not-guilty for him and just move it on forward. I mean, it just … Well, let me speak directly to that, because I think it comes from the assumption that the arraignment with a not-guilty plea is typically a pro forma matter. And I think that's probably the assumption under which it was delegated here. And I think it's an incorrect assumption. The significance of being hauled into court, of the government with all of its resources and energy dragging a man or woman into court and announcing its charges to the defendant, is especially significant. It is significant in the constitutional sense in that it's a critical stage of the proceedings. It was particularly significant here, given what happened. If you look at the transcript of the arraignment, the magistrate judge, after the objection, said, well, here's the new indictment. Do you understand it? The defendant answered, well, no, I don't understand it. I have some questions particularly about jurisdiction. Red flag, that this is something out of the ordinary here. The judge went on a little bit and then later asked if he was ready to enter a plea. The defendant said, well, no, I'm not ready to enter a plea. And the judge had to enter the plea on his behalf. If it were pro forma … Your client has a little bit of a history of having, I would say, contrary behavior. That's … the client has a history of litigious behavior. And I think I'd like to talk about how that bears on this motion and also on the right-to-counsel motion, because I think the government raises it in both cases. You know, it's the case where you have the client that is particularly quirky or has particular mental health issues. It's where you have the client that is out of the ordinary, that the procedures must especially be respected. This was a client that was out of the ordinary, however you want to characterize it, and it showed by the questions that he asked at arraignment. Now, the question is what to do in that situation. I think the answer from Gomez and from Rivera-Guerrero is that where it's a possibly dispositive matter, that delegation over-objection is impermissible. And again, we're not talking about the situation where there's merely no consent. We're talking about an active objection. Let me take your question, though, and transition to the Sixth Amendment issue, because I think that's particularly where the government talks about Mr. Stevenson's litigious history as a reason to deny his motion for substitute counsel. The fact that Mr. Stevenson had filed other lawsuits in the past is what caused the district court to assume, or I think in his words, to use his instinct to tell him that Mr. Stevenson would have the same problem with any other lawyer, and therefore, he wasn't going to grant his motion to substitute counsel. Well, that's not what the law of this circuit permits. The law of this circuit says that you can't go by instinct or anything that's not on the record when there's a motion to substitute counsel on the table. This Court in Schell, Muzo, Adelzo-Gonzalez, Di Amore, all of those cases sets out a three-part test, timeliness, adequacy of the inquiry, and extent of the conflict. And it doesn't say that the judge can assume any of those three. On timeliness... Let me... He... We're not contesting... You're not contesting the FRERETA part of it. That's not... I mean, you represented himself, right? The FRERETA... I'm not contesting... You're not attacking that part of it, so... Correct. And you don't have a right to stand by counsel, so how does that... You know, how do you assess that relative to... It's not the same as when the person, you know, when you're not representing yourself. Well, let's start with August 9th of 2005. This is the hearing at which Mr. Stevenson and his counsel both moved for substitute counsel. And I'd invite your attention to the transcript, which is the smaller sealed one that we submitted of that proceeding, because the government characterizes this as Mr. Stevenson just wanting to go on his own. That's not what the motion was. It was a motion for substitute counsel. Did that... Was there ever... Did he ever show that he had retained another lawyer, a retainer agreement? No. He had a... He had a CJA-appointed lawyer. When he... When the motion was filed on August 1st, it was for a motion for substitute counsel under the CJA. When the district court inquired on August 9th, the district court closed the hearing. If you look at ER-161, it showed that the district court closed the hearing because he understood that this was a motion for substitute counsel. And he said, on these types of motions, understanding that it was for substitute counsel, not just to go pro se, I need to ask sensitive questions. There may be issues of privilege, so we're going to close the hearing. Clearly, the district court understood this was not just a Ferretta motion, and this was not just a motion to hire somebody. He took it the way it was offered as a motion for substitute counsel. So we go into the closed hearing, and that's the excerpt, the small excerpt of record. And what happens there? Ms. Sullivan says we're having a failure to communicate. The district court does not indicate any disbelief in it. And the district court turns twice to ask Mr. Stevenson. What does the district court ask Mr. Stevenson? First, it asks him about calling Ms. Sullivan as a witness and whether that was really necessary. And second, it asks about have you really are you really able to retain a lawyer. Mr. Stevenson gives brief answers to both of those. This is pages 246 to 248. And the Court then turns back again to Ms. Sullivan, goes on the record and says, motion's denied. Let's have a Ferretta hearing back out on the record. And they go forward with the Ferretta hearing. So it's what happened on August 9th of 2005 that's critical. He was asking for a new lawyer. Well, what do you do with the situation? And, you know, you sound like you're you have some experience in this area, as do I. What do you do with the that I mean, the court basically found that this was a person you can't get along with anyone. And the problem is yours. It's not the problem of the lawyer. And it's not unheard of in the realm that, you know, that when, you know, you get motions, you know, that first there's that, OK, I want another lawyer. And the court says, well, there's nothing wrong with this lawyer. You just don't like that lawyer. And then he says, well, I want the court to give me another lawyer, but he doesn't have the money to. And then he says he's going to retain. But then there's no evidence of that. And then it moves into, well, I want to represent myself. And then you go through the Ferretta. And then if they get convicted on the Ferretta, then there was something wrong with, you know, what happened prior to that. So I'm going to give you two answers to that, a legal answer and a practical answer, as best I can. The legal answer is, when the defendant says that, as long as it's timely, you conduct an inquiry. And I think Adelzo-Gonzalez and D'Amore go into detail on what type of debt. But the court said that you're – the court did, you know, go in camera and said – but said, you can't get along with anyone. But the inquiry – there was no inquiry. The inquiry that the court is supposed to conduct under those cases and all the other Ninth Circuit cases is not an inquiry of Ms. Sullivan, the lawyer, or an inquiry of the government. The inquiry is supposed to be of the defendant. And D'Amore even says it's supposed to be a searching inquiry of the defendant to reach an informed decision of the court and to ease the defendant's concerns. So the court has to say to the guy, what's the problem? Are you able to communicate? Oh, you did tell her you wanted those motions. What did she say to you? Okay. Did that satisfy you? You have to ask the defendant that and allow the defendant to answer before it can be considered an inquiry on that point at all. That's the least that needs to be done. And that's the legal answer, I believe, to your question. As a practical matter, I'll tell you what's almost always done in this district by the judges – the more experienced judges. If it happens and there's any unclarity, a second CJA lawyer is appointed. If it happens again, that's it. But almost everybody gets a second bite at the apple. The district court judge in this case is – was less experienced, did not do that. I think if he had, it would have obviated a lot of problems, because what we have is a record where the judge intuits, uses his instinct, offers sympathy, but goes on instinct, not on the record. And under the controlling authority of this circuit, Musa, D'Amore, Adelso-Gonzalez, you've got to go on the record. That's why the inquiry prong of the defendant is so critical. Your time's going ahead. I would like to ask you about the statute of limitations problem. I take it that your client doesn't challenge the two acts that were within the statute of limitations. Is that correct? I'm sorry. Could you say it one more time? Yeah. The judge failed to instruct the jury that the overt acts had to be within the statute of limitations. Correct. But there were two acts, apparently, that were within the statute of limitations. I take it that you don't challenge that at all. I don't. In fact, the government's response is correct, that I think there were six acts within the statute of limitations, and there were about 20 paragraphs, 26 to 45 of the indictment that were outside the statute of limitations. But I read the law in this area to say that the statute of limitations is an affirmative defense. And if it's not raised as an affirmative defense, then you've got a waiver issue. The only place that I see in the record where your client raised it was at the arraignment, not during the trial. So why is this just not waived? Two answers, Your Honor. It's not. The Supreme Court just says it's not a jurisdictional issue. It's an affirmative defense. Correct. It was raised pretrial, not at the arraignment, at CR 134. All right. But it says you've got to raise it during the trial. Where was it raised during the trial? Well, if it's — if what I'm raising is a statute of limitations affirmative defense now, then I'd have to have raised it during the trial. What I'm raising is solely a jury instruction issue now. So we go under U.S. v. Fuchs, and we look at what that Court said about raising this jury instruction, which it reviewed as a matter of plain error. And it said, well, because the guy raised the statute of limitations issue before, people knew it was out on the table. We're going to look at the jury instruction issue. But in Fuchs, it's distinguishable because the defendants moved to dismiss the indictment based on the statute of limitations. That's different than in this case. No. I think at CR 134, if I'm remembering it correctly, and it's in the erratum that I had submitted, that there was a motion to dismiss because it was outside the statute of limitations. I think it's CR 134, let's see, page 3, there's a statute of limitations issue, and page 52, paragraph 175. Those are the two that I'm relying on. I'd also say that under Haynes v. Kern in the Supreme Court case, the rule of liberal construction applies here. So that if you think that the language of CR 134, which was a pretrial motion, wasn't perfect, I'd urge you to apply the rule of liberal construction to that as well. I'll reserve my remaining nine seconds. Thank you. May it please the Court. My name is Robert Lyons, appearing on behalf of the United States. Does the Court have a preference as to which issue I address first? Well, I'm fairly interested in the statute of limitations issue. Very good. In the erratum, the defendant submits that the defendant raised the statute of limitations issue pretrial. There is no assertion that it was made during the trial. That pretrial document that is cited is premised on the statute of limitations the argument is premised on the statute of limitations being five years. That is erroneous as a district court held. It is six years. Having been corrected that the statute is six years, not five years, the defendant did not re-urge a statute of limitations argument during the trial. And our first argument was that the defendant did not re-urge a statute of limitations argument during the trial. It couldn't. If there's concededly six acts that occurred within the limitations period, there's no way you can move to dismiss the indictment or anything. I think the complaint is, well, there was nothing wrong with the charges that would permit me to move to have them dismissed for limitations, because there were actually some acts charged within the period. But what I want to be sure is that the jury found those acts actually were committed. And so I just want an instruction. And it didn't get it. So the argument that we're addressing at this moment is whether we even get to the plain-error argument. And I just want to make that clear, because we have a strong argument that there was no reversible plain-error. But for this particular issue that we're talking about is whether we even get to review the absence of the instruction for reversible plain-error, whether the defendant has to do more to make the argument. Now, let's assume we have a – we do get to the plain-error issue. You know, was there error? Well, the error has to be, you know, was it erroneous? Was it obvious? Was it, you know, for the Court not to give this instruction? And I would submit no, because the argument that the defendant made pretrial was based on the statute of limitations being five years. Well, it's not five years. It's six years. And that brings in many, many more acts. And so the judge was not on notice that he still wanted to make – or that it was still at issue that there was a statute of limitations issue. I would also note that, you know, if we are going to get to, you know, the rest of the plain-error analysis, that the defendant was convicted on failure to file counts and improving to the jury beyond a reasonable doubt that the defendant sold trusts, had income, and failed to report that income or pay taxes on that income, the counts on which the jury convicted, the government proved beyond a reasonable doubt the overt acts. I would also – Did Stevenson introduce any evidence that he did not advise R.M. and M.M. to proceed to prepare a false tax return on April 14th of 1999? He did not contest the dates. As we state in our brief, the defendant proceeding pro se cross-examined the government's witnesses, did not contest the dates on which the government submitted the trusts were sold. So I – he didn't – he didn't introduce any evidence that he did not sell any trusts after February 23rd, 1999? He did not contest. And I don't want to say, like, he didn't have to put evidence on, but he did not contest, did not cross-examine the government's witnesses, did not challenge the government's evidence as to the dates that the trusts were sold. So there was, you know, unlike the Fuse case, there was nothing in the trial itself that gave anybody notice, the Court, the attorneys, that the statute of limitations issue was still being contested at all. So even if we get – I understand how the Court, you know, it might be a close call as to whether you want to hold that he preserved it, whether you can review the jury instruction issue at all. I'll yield that that is not an easy holding one way or the other. But I would strongly argue that if this Court were to hold an assuming arguendo, it could review this, that there was no reversible plain error for the reasons we've stated on brief. And, you know, the erratum that was submitted goes solely to whether this Court can even review the argument or whether we're under low, and the Court, you know, cannot. So – but that's all it goes to. It doesn't go to the plain error argument that we've submitted. Now, in their opening brief, they don't even go through all the elements of plain error. They just said, oh, you know, one small site to fuse, and say, oh, it was reversible plain error, without going into all the evidence that the government presented that on the – on the dates that the trusts were sold. And, again, I would submit that the jury's conviction on the 1999 and 2003 to file counts is evidence that, you know, that there's no doubt that had the jury been instructed as to the statute of limitations instruction, that it would have convicted on the conspiracy count, because it did convict on the two theory to file counts, which were the evidence of which was predicated on trusts being sold in 1999 in the year 2000, which are within the statute of limitations period. Only? Or were there other acts? In other words, can we – can we say from looking at that that the jury necessarily found an act, an overt act, to have been committed within the limitations period? Well, it's – you want to – all the evidence that – well, I mean, I point to those because it goes to the convictions. But you can look at all the trust – evidence of the trusts that were sold, the witnesses that got up that said the dates, the – Well, what about his – his advice to RM and MM to prepare false tax returns on April 14th, 1999? What – what's that? His own – his – I'm sorry. I don't understand. Well, didn't he introduce evidence that – did he – did he – did he introduce evidence – was there evidence introduced that he did give advice to RM and MM on April 14th of 1999? As – as alleged in the indictment? Yes. Yes, but I have to tell – Is that within the statute of limitations period? Is that within the time frame? Yes. The conspiracy continued through – I guess what I'm asking, what – what acts were during the six years? Wasn't that one of the acts? Yes. Now, I'm trying to look at my brief here. On page 25 is what – is the evidence I cited in support of that. And, again, the defendant did not contest any of the dates. There was nothing in the case that indicated that he challenged that we submitted evidence within the Old Byrd's Acts, within the – I guess – I mean, I understand your argument that it's – it's virtually – it's very, very, very likely that the jury just found that. And what we – the reason I think we're asking the question is, is it inevitable that the jury found that? Because we probably are wondering whether we can make that finding for the jury. Well, if I can't – But if it's clear that the jury necessarily found it. Well, I would submit because in 1999, if he committed acts in 1999 and 2000, the conspiracy count was timely. He was convicted of fairy defile returns for 1999 and the year 2000. The government's evidence on those two counts was his selling – his sales of trusts. The government would have lost the 1999 fairy defile count and the 2000 fairy defile count if it had not proved he had income in those years. The government would not have proved he had income in those years had it not proved, beyond a reasonable doubt to the jury, that he sold trusts during 1999 and 2000. And those are necessarily within the six years, right? Yes, sir. I mean, we prove – as long as we prove an act through February 23rd, 1999, as we say on page 25 of our brief, the conspiracy count was timely. And the point I'm making is the jury convicted him for 1999 and 2000 for failing to file returns. One of the elements for that count is you were required to file a return. The predicate to that is you had income above the minimum statutory threshold to be required to file a return. The government's proof, its evidence to meet that element was his selling trusts in 1999 and 2000. Right. And that's the point I'm trying to make, Your Honor, that, you know, it would be tougher on the government, perhaps, if a jury had acquitted on the 1999 and 2000 failure-to-file counts, because then you could say, well, maybe the jury didn't believe the government's evidence that he sold trusts in 1999 and 2000. But they convicted. And thus, I'm arguing to you that the jury must have believed, must have found beyond a reasonable doubt, that he sold trusts in 1999 and 2000. Otherwise, he could not have convicted him on those two counts. May I go to another issue? When the magistrate does this arraignment, what happens if the plea is guilty? As the defendant herself, the counsel indicates at page 12 and 13 of her reply brief, it's equivalent to a motion for to be allowed to plead guilty. There's, you know, at an arraignment, if the defendant pleads guilty, there's no Rule 11 proceeding. You don't go directly into a Rule 11. If a defendant goes to an arraignment and says, I want to plead guilty, they go, okay, you're going to go to this track. You got to go, and the district judge is going to do a Rule 11 and accept your guilty plea. If a defendant goes to a magistrate judge and pleads guilty as opposed to not guilty, you don't have a Rule 11 proceeding. You don't have an acceptance of the plea. So as the defendant herself indicates at 12 and 13 of her reply brief, you know, a district judge in the Fifth Circuit and Dees has said, well, that's equivalent to a motion for permission to plead guilty. And that's one of the weaknesses of the defendant's argument, is there's They equate a Rule 11 proceeding with an arraignment where the defendant pleads guilty. The two are not the same. You know, at an arraignment, you know, even if the defendant says, I'm going to plead guilty, it's not the guilty plea is not accepted at that point. I've never heard of that. You have a separate Rule 11. Well, you couldn't. Well, but then you move the defendant to the district judge's chamber or courtroom. But, I mean, you know, their criticism of the government position is, well, you don't know prospectively whether the district, the magistrate judge has jurisdiction to be delegated this responsibility. Well, that argument is predicated on the incorrect premise that the magistrate is going to accept when it accepts the not guilty plea, it's accepting doing a Rule 11, and formally accepting the guilty plea. That's not the case. At that point, when he says, I want to plead guilty, Your Honor, to all accounts in the indictment, that case gets put on a different track and goes to the district judge for the Rule 11, unless the defendant agrees there might be a different result. But if he doesn't agree, it goes to the district judge.  I'm sorry, Your Honor? Would there be consents to letting the magistrate take the plea? Yes, I believe that's permissible. I mean, I'm trying to think of a reason why it would not be permissible. I think in my own docket, I've seen that. I will note, and I don't make too much of it, but, you know, there was an original indictment to which there was no objection lodged, and a superseding indictment which the only change was an edit to the obstruction or the contempt charge, excuse me, and that contempt charge was severed and ultimately dismissed by the government. So, I mean, the first time that the charges at which he was tried and convicted were explained to him, there was no objection that I don't that he didn't understand what was going on. It was only, you know, with this superseding indictment which only went to the contempt charge that this issue of I don't recognize the jurisdiction of the court. I mean, this, you know, this, the Ninth Circuit here has been, received certain filings from Mr. Stevenson from prison that sort of, you know, give the Court an indication as to, you know, what the district judge faced. And I would note that one of the points that, you know, counsel made on brief was, you know, that perhaps the district judge wasn't aware of all the filings of the defendant saying that they, that this information came from the PSR in sentencing. And I would submit that if you look at the district judge's, it's in our brief, the district judge's transcript, the Court says it's aware of a bar, litigation bar, where he filed 10 or 20 frivolous lawsuits, and the Court says, I'm aware of this litigation bar. Because of the litigation bar, the summons was issued in error. So, I mean, the judge was fully aware of the defendant's history of trying to upset judicial proceedings by filing lawsuits against judges and other public officials. So, you know, the statement that, you know, there should have been, you know, a somewhat different inquiry made, I think is incorrect. I would also note that there was an alternative remedy requested. Substitution of counsel, or I want to proceed pro se. Well, Ferretta hearing was granted or held, and his was allowed to proceed pro se, as requested. They don't argue on appeal that his decision to proceed pro se was coerced, uninformed, whatever challenges one can make to a Ferretta ruling. So they, you know, so my position is that they cannot challenge now the, you know, the defendant's decision to go pro se indirectly by saying, well, the judge should have done some sort of different hearing before having substitution of counsel. And I don't mean to be glib, but there was a substitution of counsel. Defendant himself was allowed. I mean, this is not a case where the appointed counsel, where the defendant was forced to go to trial with the appointed counsel. No. The judge says, okay, appointed counsel, you're off the case. You're off. She want to get away from him first? Was it didn't it start that she asked to withdraw first? Well, it's What came first? Did he ask to get rid of her? Did she ask to withdraw first? It's, you know, I'd have to look at the record in more detail to give you an accurate answer. It's, she certainly, he was a difficult client, as the record reflects. And, you know, at what point she says, I don't want you as a client, and he says, well, I don't want you as an attorney. Now, I would also note that the record  attorney, he wants somebody who's going to go, you know, a lay person, perhaps, who's going to go state his particular views. And the judge made clear, you know, I don't, I'm not quite sure you're going to be able to go find an attorney who's going, a licensed attorney who's going to make the arguments you want to make. I'm going to give you that opportunity, but I'm telling you now, you can't come to court with someone who's not licensed to practice in this court. And, you know, the record reflects. The Court is aware of Mr. Stevenson's history in this regard. So I think the record, I think the district judge was on sound grounds, and the record reflects that. I mean, even the defense attorney, she, the only equivocation she had with whether a different attorney would do better was with respect to the Stevenson wanted to make her a witness. Well, the contempt charge, and, you know, soon thereafter, the contempt charge was severed and ultimately dismissed. So that fell out of the case. So, you know, it was severed. So, you know, this issue of, of whether a different attorney would do better became moot because vis-a-vis the charges that were going to trial, a different attorney would not have had a better relationship with Mr. Stevenson. I think I've hit all my points on this. The panel does not have any further questions. Thank you. Thank you. You may have one minute. On the statute of limitations issue, I think counsel is wrong about having necessarily proved this by proving the failure to file counts. My notes show that they proved the failure to file counts by putting a case agent on the stand who reviewed Mr. Stevenson's bank accounts for 98, 99, and 2000, and then put on an IRS no record of filings, and that those that record of bank accounts wasn't necessarily tied into the 313-2000 or 323-2000 trusts that they had to prove. So proof of the failures to file didn't necessarily be true. Is there proof of any other source of income for this man? Well, I think the narrow question is whether there's proof of any other source of income following the statute of limitations period. The answer is no. I don't believe that it was detailed in court where other sources of income came from, but when the case agent introduced all that evidence, he didn't say exactly where the money in the bank accounts had come from. Well, that's my question. Did he have to, because was there any other source of income? There was no other source of income that was presented. That wasn't a question. It would only be a question on this statute of limitations issue. If there was no other source of income, then the only way that the government's argument is that the only way they could have found him guilty would be based on that, and therefore that's the only way. Well, but there's more money shown in those 98, 99, and 2000 bank account entries than is accounted for by simply the few trust transactions that they showed that were after the statute of limitations period ended. So neither side presented where the other money came from. We don't know if it was legitimate or illegitimate, but we'd have to say that it wasn't necessarily from the proven transactions, because there was more than that. All right. Your time has expired. Thank you for your argument. This matter will now stand submitted. Aurelio Duran.
judges: Canby, Hall, Callahan